H. W. Kaiser and J. H. Hammel, Jr., both of New Orleans, for appellant.

Herman L. Midlo, of New Orleans, for appellee.

## KUPPERMAN v. MOORE et al. *

### No. 16038.

Court of Appeal of Louisiana. Orleans.

March 9, 1936.

JANVIER, Judge.

This is a suit for damages for the alleged illegal seizure of an automobile.

Emery R. Moore, owner of a certain apartment building in New Orleans, leased one of the apartments to Jack Gordon, who, with his wife, occupied it as a residence. Though we do not find the lease in the record, it seems to have also involved a garage and the right to the use of a common driveway from the street to the garage. An automobile was kept in the garage. Mrs. Gordon died on December 8, 1932, and Mr. Gordon continued to occupy the premises until the 28th or 29th of December. During the early part of January, 1933, the owner, Moore, discovered that Gordon had vacated the premises, and he also found that the automobile had been removed, and, finding it located at the residence of Mrs. Sylvia Levitan Kupperman, the present plaintiff, and believing that it belonged to the community which had formerly existed between Gordon and his wife, he provoked the issuance of a writ of provisional seizure, and under this writ the civil sheriff for the parish of Orleans seized the said car and placed it in his warehouse on January 10, 1933. On January 11 Mrs. Kupperman made affidavit that the said automobile belonged to her and demanded that it be returned to her and, as a result of this affidavit and demand, since Moore was un-

*Rehearing denied April 6, 1936.

willing to furnish bond as he might have done in accordance with Act No. 37 of 1882, or to take any steps to traverse the affidavit, she (Mrs. Kupperman) secured its release on January 13. This suit is the result of that seizure.

Mrs. Kupperman, claiming that she is and was the owner of the said automobile and that the said seizure was illegal, seeks judgment against Moore and against the civil sheriff for the parish of Orleans in the sum of $800. In the district court there was judgment for plaintiff for $150 against Moore, and he has appealed.

There was also judgment dismissing the suit as against the civil sheriff, and from this judgment there has been no appeal.

We first notice that Mrs. Kupperman pitches her suit on her allegation that she is at present, and was at the time of the seizure, the owner of the automobile. In order to establish that the automobile belongs to her, she offers evidence to prove that Mrs. Gordon, who was her sister, on many occasions prior to her death had stated that after her death she wanted plaintiff, Mrs. Kupperman, to have the automobile. That Mrs. Gordon did say this is well established, but it is conceded that there was no actual donation of the car prior to the death of Mrs. Gordon; all of the witnesses having made it quite clear that it was the intention that the automobile was to remain Mrs. Gordon's until her death. It also appears that Mrs. Kupperman did not take possession of it until after the death of her sister.

Of course, such verbal testament, to take effect after death, cannot be recognized. Such dispositions have been entirely abrogated by article 1576 of the Civil Code. In Succession of Rusha, 158 La. 74, 103 So. 515, 516, our Supreme Court said:

"Testamentary dispositions can be made only *in writing* in the form and manner prescribed by law for wills. Hence testamentary dispositions can *never* be established, *as such,* by any amount of parol evidence as to the verbally declared intentions of the deceased. And it is but one step from the *explaining* of a written testamentary disposition by proof of the verbal declarations of the testator, to the establishing of a *verbal testamentary disposition;* the line of demarcation between the two being *very* fine, if indeed it exists at all."

Furthermore, it appears that Mrs. Kupperman herself did not consider that the automobile was hers, because when her sister, Mrs. Gordon, died and her estate was inventoried, she, an executrix, permitted the said automobile to be inventoried as the property of Mrs. Gordon and made no claim that it belonged to her individually, or that it should not have been included among the items forming the estate of her sister. It is argued now that the automobile was inventoried merely because the laws of this state require that all property of a deceased person be inventoried for inheritance tax purposes. But if the automobile had been given by Mrs. Gordon to her sister, it no longer formed part of her estate, and the laws requiring that all property of a deceased person be inventoried for inheritance tax purposes would have no application thereto.

■ Apparently realizing this obvious defect in her alleged title to the automobile, plaintiff attempts to show that all of the remaining heirs have agreed since Mrs. Gordon's death that her verbally expressed desire should be carried out, and have consented that Mrs. Kupperman should take possession of the car as hers. But unfortunately it appears that one of the heirs is an interdict and, manifestly, he could not have been a party to such an agreement. Civ.Code, art. 1788 provides that:

"The contract, entered into by a person of insane mind, is void as to him for the want of that consent, which none but persons in possession of their mental faculties can give."

The same article also provides:

"That, after the interdiction, no other evidence than the interdiction itself is necessary to prove the incapacity of the person."

The interdiction is admitted in this case; therefore that particular heir could not have consented, and the title of Mrs. Kupperman, claimed to be based on the consent of the heirs, cannot be recognized.

■ That the seizure of the automobile was illegal we entertain no doubt. It is shown that the title to the said car was in Mrs. Gordon and that it formed no part of the community which had previously existed between her and Mr. Gordon. Therefore the moment it was removed from the leased premises it was no longer affected by the lien of the landlord, for it is well settled that the wife of a tenant is not a tenant and that, therefore, separate property of the wife, so far as the lessor's lien

is concerned, is considered as property of a third person.

In Moses v. Traverse, 11 Orleans App. 342, it was held that the separate property of a wife may not be seized under a lessor's lien after it has been removed from the leased premises. See, also, Dart's Louisiana Digest, Landlord & Tenant, § 108.

But the fact that there has been an illegal seizure is not all that is necessary to justify a recovery here, for the question which we must next consider is whether the duty rests upon the plaintiff to allege and establish her ownership of the car, or, at least, such right to its possession as would entitle her to claim damage from someone who has illegally deprived her of that possession, or whether defendant Moore, who did not see fit to oppose Mrs. Kupperman when she secured the release of the automobile when it had been seized at the instance of the said Moore, can now be heard to question the allegations of Mrs. Kupperman to the effect that she is the owner. The proceeding to which Mrs. Kupperman resorted is authorized by Act No. 37 of 1882, which provides that, where property is seized and a third person claims it as owner, either personally or in a representative or fiduciary capacity, the said third person may make claim thereto supported by an affidavit "setting forth all the facts on which his title or claim of ownership is based," and that, if he does do so, the seizing creditor, if he wishes to maintain the seizure, shall file with the sheriff a bond of indemnity to protect the sheriff against any claim for damages which may result if the seizure is shown to have been an illegal one.

Since the claim of such person who proceeds under that statute must be based upon the ownership of the article seized, and since the affidavit must set forth all the facts upon which the claim of ownership is based, it may appear, at first thought, that it is in that proceeding that the question of title to the seized article should be thrashed out and that, should the seizing creditor not see fit to contest the claim of ownership presented in the affidavit, he should be estopped later, in a suit for damages, to deny the ownership of the person on whose claim the article was released from seizure.

But a study of that act shows that it was not the purpose of its framers to do more than to furnish to a sheriff, or to a con-

stable, a method of protecting himself against loss. The bond which the seizing creditor is permitted to furnish does not run in favor of a third person, but solely in favor of the sheriff, or the constable, and the act makes no provision for the trial at that time of the issue of ownership.

It is true that, in at least two cases which our research has discovered, seizing creditors were permitted to traverse such claims supported by affidavits. See Item Co. Ltd. v. LiRocchi, 9 La.App. 398, 121 So. 783; Alliance Trust Co. v. Paggistreater Co. (La.App.) 155 So. 413. But in neither of those cases was there raised the question of the right to so proceed, and, furthermore, even if such a right to traverse such an affidavit exists, obviously the statute does not expressly require that such procedure be taken in order to preserve the rights of the seizing creditor to later raise the question of ownership. It would impose upon a seizing creditor an undue hardship to require that he determine at that time and at his peril whether he should fight out the question of the intervener's title. He would indeed find himself in a dilemma. If such a creditor has seized property which, in good faith, he believes belongs to his debtor, and some one else claims the said property, he should be permitted to acquiesce in the release of the property, without thereby depriving himself of the right to later test the claim of ownership should it be presented in a suit for damages. In other words, if his acquiescence in the release automatically cuts him off from the right to question the title of the intervener, then he would be under the necessity of contesting the matter then and there, with the result that the seizure would be maintained pending the trial of that issue and the damage which the intervener has sustained would be augmented by the additional time required by that trial. Unless such a result is expressly required by the statute, we feel that to interpret it as requiring such result would be not warranted by a consideration of the purpose for which the said statute was passed. It may be that, in order to maintain such a suit as this, a plaintiff need not show title to the property which has been seized. Possibly, as the possessor, she has such a claim. But she has not sued as possessor. She has pitched her case entirely on the allegation that she is the owner. She might have proceeded under Act No. 51 of 1876, by which a person who claims possession of property

in any one of several capacities may obtain the release thereof by intervening and by filing bond. But she did not choose to follow this course. She alleged, as we have said, that she was the owner and she attempted to prove her title. She failed to do so.

It may also be that, as one of the executors of the estate of her sister, Mrs. Gordon, she is entitled to claim damages on behalf of the estate; but she has made no such claim. The claim ·is made solely and only in her individual capacity and as the alleged owner. She has not shown that she is the owner. She cannot recover on this claim.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of the defendant dismissing plaintiff's suit at her cost.

Reversed.